1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DARLA TYLER, | ) | 1:11-cv-00781 AWI GSA |
| | ) | |
| Plaintiff, | ) | **FINDINGS AND RECOMMENDATIONS** |
| | ) | **REGARDING PLAINTIFF'S SOCIAL** |
| v. | ) | **SECURITY COMPLAINT** |
| | ) | |
| MICHAEL ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff Darla Tyler ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin, for findings and recommendations to the District Court.

//

//

1

1

## FACTS AND PRIOR PROCEEDINGS[1]

2        Plaintiff filed applications for benefits in April 2007, alleging disability as of January 31,

3    2004.  AR 89-100.  Plaintiff's applications were denied initially and on reconsideration; she then

4    requested a hearing before an Administrative Law Judge ("ALJ").  AR 43-47, 50-55, 57.  ALJ

5    Laura Speck Havens held a hearing and subsequently issued an order denying benefits on

6    October 13, 2009, finding Plaintiff was not disabled.  AR 9-16.  On March 14, 2011, the Appeals

7    Council denied review.  AR 1-3.

8        **Hearing Testimony**

9        ALJ Havens held a hearing on May 7, 2009, in Stockton, California.  Plaintiff appeared

10   and testified; she was assisted by attorney Gina Fazio.  Vocational Expert ("VE") George Meyers

11   also testified.  AR 17-35.

12       Plaintiff was born March 6, 1966, and thus was forty-three years old on the date of the

13   hearing.  AR 22.  She lives in an apartment with her boyfriend and her children, two of whom

14   live at home.  They are eighteen and fourteen years old.  AR 23-24.

15       She completed the eleventh grade, but did not earn a diploma or receive any vocational

16   training.  AR 22.  Plaintiff can read the newspaper and perform simple mathematical

17   calculations.  AR 22.  She does not have a driver's license nor has she ever had one.  She

18   depends upon her boyfriend for transportation.  AR 25.

19       While her application indicated she became disabled as of January 31, 2004, Plaintiff

20   could not remember why she selected that date; she has not worked since that date.  AR 23.

21   From 2000 to 2004, Plaintiff worked on an assembly line.  She did not work between 1994 and

22   2000.  AR 23.

23       Asked about her day, Plaintiff indicated she gets up about 5 a.m.  She is able to bathe and

24   dress without assistance.  She does chores around the apartment, cooks, washes dishes, mops and

25

26
            [1]References to the Administrative Record will be designated as "AR," followed by the appropriate page
27   number.

28                                          2

sweeps, does laundry and shopping. AR 24. She watches a couple hours of television a day. AR 25. She used to enjoy puzzles, but she no longer does them. AR 25. Because her hands and wrists bother her, she also no longer enjoys doing macrame or "plastic canvasses." AR 30.

Plaintiff suffers from Crohn's Disease, colitis, knee pain and carpal tunnel syndrome. AR 23. She feels pain in her stomach and wrists. AR 27. Plaintiff has problems eating because there are certain foods she cannot eat. AR 25. Spicy foods hurt her stomach. AR 28. Additionally, she only sleeps about four hours a night. AR 25-26. Plaintiff estimated she could walk or stand for about thirty minutes at one time; she can sit for about thirty minutes as well. AR 27. After walking for about thirty minutes, her legs and back begin to hurt. AR 29. Her back also bothers her when she is sitting. AR 30. She can lift about ten pounds. AR 27.

On average, Plaintiff sees her primary care physician, Danielle Myers, every three months or so. AR 26-27. Regarding her wrists, Plaintiff mainly feels pain in her right wrist; she is right-handed. AR 27. She is able to pick up a book or a cup, can move her fingers on a keyboard, and can feel hot and cold. AR 27-28. She has not had any testing done on her hands however. AR 30. The stomach pain she feels every day, constantly. It is a "raw, sharp pain." On a scale of one to ten, Plaintiff rated that pain as an eight. AR 28.

Plaintiff has undergone two surgeries and "three-fourths of [her] large intestine" were removed. AR 28. She did feel better after the surgeries, the last of which was performed a couple years ago, but her stomach does still hurt. AR 28-29. She is not scheduled to undergo any further surgery at this time. AR 29.

Because of the surgeries, Plaintiff has to use the restroom about fifteen times a day, for about five minutes at a time. This is an increase over pre-surgery restroom usage. AR 29. When she was asked what kept her from working, Plaintiff indicated her stomach pain and the need to use the bathroom frequently. AR 30.

1    VE Meyers identified Plaintiff's past work as a bottle line attendant, DOT[2] 920.687-042,

2    light and unskilled, with an SVP[3] of one, although Plaintiff performed the work at the medium

3    level.  AR 31.

4    In the first hypothetical question, the VE was asked to consider an individual of

5    Plaintiff's age, education and experience, who can sit eight hours in an eight-hour day, can stand

6    for three hours in an eight-hour day, can walk for three hours in an eight-hour day, with a

7    sit/stand option, can occasionally lift and carry twenty pounds, can frequently lift and carry ten

8    pounds, and can occasionally climb, balance, stoop, kneel, crouch and crawl, and finally, who

9    must avoid concentrated exposure to temperature extremes, vibration, heights and moving

10   machinery.  AR 31.  VE Meyers indicated such an individual could not perform Plaintiff's past

11   work.  AR 31-32.  However, such an individual could perform the following work: (1) storage

12   rental clerk, DOT 295.367-026, light and unskilled, SVP of 2, with a twenty percent erosion to

13   account for the sit/stand option, leaving 9,000 jobs in California; (2) officer helper, DOT

14   239.567-010, light and unskilled, SVP of 2, with a twenty-five percent erosion to account for the

15   sit/stand option, leaving 25,000 jobs in California; and (3) order clerk, DOT 209.567-014,

16   sedentary and unskilled, SVP of 2, with a forty percent erosion to account for the sit/stand option,

17   leaving 6,000 jobs in California.  AR 32.

18   VE Meyers was asked by Plaintiff's counsel to consider a further limitation where an

19   individual such as Plaintiff must use the restroom about fifteen times a day for about five minutes

20   at a time.  The VE indicated such an individual would be unable to maintain employment on a

21   sustained basis.  AR 32-33.  When asked by counsel whether a sedentary RFC with the

22   limitations of never climbing, stooping, kneeling, crouching and crawling, would change his

23   opinion about the individual's ability to do other work, VE Meyers indicated such an individual

24

25   _____

26        [2]"DOT" refers to the Dictionary of Occupational Titles.

27        [3]"SVP" refers to Specific Vocational Preparation.

28                                            4

1   could still perform the work of an order clerk without the need for erosion, leaving 10,000 jobs in

2   California.  AR 33.

3   **Medical Record**

4   The entire medical record was reviewed by the Court.  AR 155-737.  The medical

5   evidence will be referenced below as necessary to this Court's decision.

6   **ALJ's Findings**

7   Using the Social Security Administration's five-step sequential evaluation process, the

8   ALJ determined that Plaintiff did not meet the disability standard.  AR 9-16.

9   More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful

10   activity since January 31, 2004.  AR 11.  Further, the ALJ identified Crohn's disease, colitis, and

11   knee pain as severe impairments.  AR 11.  Nonetheless, the ALJ determined that the severity of

12   the Plaintiff's impairments or combination of impairments did not meet or exceed any of the

13   listed impairments.  AR 12.

14   Based on her review of the entire record, the ALJ determined that Plaintiff has the RFC to

15   lift and carry twenty pounds occasionally and ten pounds frequently, to sit for eight hours in an

16   eight-hour day, and stand and walk for three hours in an eight-hour day with a sit/stand option,

17   can occasionally climb, balance, stoop, crouch, kneel, and crawl, and must avoid concentrated

18   exposure to heights, moving machinery, extreme temperatures and vibrations.  AR 12-14.

19   Next, the ALJ determined that Plaintiff was not capable of performing her past relevant

20   work.  AR 14-15.  Nevertheless, the ALJ determined Plaintiff could perform the work of a

21   storage rental clerk, an office helper, and an order clerk.  AR 15-16.  Thus, the ALJ concluded

22   Plaintiff was not disabled.  AR 16.

23   **SCOPE OF REVIEW**

24   Congress has provided a limited scope of judicial review of the Commissioner's decision

25   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

26   this Court must determine whether the decision of the Commissioner is supported by substantial

27

28

1    evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

2    *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

3    *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

4    reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

5    401.  The record as a whole must be considered, weighing both the evidence that supports and

6    the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

7    995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

8    apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

9    This Court must uphold the Commissioner's determination that the claimant is not disabled if the

10   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

11   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

12   Cir. 1987).

13                                        **REVIEW**

14           In order to qualify for benefits, a claimant must establish that he is unable to engage in

15   substantial gainful activity due to a medically determinable physical or mental impairment which

16   has lasted or can be expected to last for a continuous period of not less than twelve months.  42

17   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

18   such severity that he is not only unable to do her previous work, but cannot, considering his age,

19   education, and work experience, engage in any other kind of substantial gainful work which

20   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

21   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

22   Cir. 1990).

23           Here, Plaintiff argues that the ALJ (1) erred by neither addressing nor discrediting her

24   need for bathroom breaks; (2) erred in rejecting the treating physician opinions; and (3) erred at

25   step five.  (Doc. 13 at 5-11.)

26

27

28                                          6

1

**DISCUSSION**[4]

2

### *The ALJ's Credibility Findings*

3
Plaintiff argues that the ALJ erred by failing to address or credit her need to use the

4
restroom fifteen times per day as a symptom of her severe impairments.  Plaintiff argues this is

5
significant because the VE indicated that a person with such a limitation would be precluded

6
from work.  (Doc. 13 at 5-6.)  Defendant fails to address this argument in terms of a credibility

7
analysis.[5]

8
A two step analysis applies at the administrative level when considering a claimant's

9
subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the

10
claimant must produce objective medical evidence of an impairment that could reasonably be

11
expected to produce some degree of the symptom or pain alleged.  *Id.* at 1281-1282.  If the

12
claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

13
claimant's testimony regarding the severity of his symptoms only if he makes specific findings

14
that include clear and convincing reasons for doing so.  *Id.* at 1281.  The ALJ must "state which

15
testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

16
*v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), internal quotations & citations omitted

17
("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible

18
renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by

19
substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be

20
sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

21
the adjudicator gave to the individual's statements and reasons for that weight").

22

23
[4]The parties are advised that this Court has carefully reviewed and considered all of the briefs, including

24
arguments, points and authorities, declarations, and/or exhibits.  Any omission of reference to a specific argument or
brief is not to be construed that the Court did not consider the argument or brief.

25

26
[5]The Commissioner's brief interprets Plaintiff's claims on appeal to be the ALJ's failure to properly assess
the opinions of Drs. Myers and Plotzker, and the related VE testimony.  (*See* Doc. 19 at 6.)  However, Plaintiff's first

27
argument plainly references matters pertaining to credibility.

28

An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians.  *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment."  *Orn v. Astrue*, 495 F.3d at 635, citation omitted.

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working."  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings.  *Id.*  "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision."  *Id.*, citing *Magallanes v. Bowen*, 881 F.2d at 755.  The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony.  *Id.* at 602.  However, an ALJ cannot be required to believe every allegation of disabling pain.  "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain."  *Id.* at 603.

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that Plaintiff suffered from the severe impairments of Crohn's disease, colitis and knee pain, and that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms.  There is no evidence of malingering.  AR 11.  This finding satisfied step one of the credibility analysis.  *Smolen*, 80 F.3d at 1281-1282.

At step two of the credibility analysis, ALJ Havens offered a laundry list of reasons to discount Plaintiff's credibility; there are no less than twenty-one separate reasons offered.  AR 13-14.  Of those twenty-one reasons listed, approximately five relate to her severe impairments of Crohn's disease and/or ulcerative colitis. AR 13.  Nevertheless, there is no mention of Plaintiff's need to use the restroom frequently. *See* AR 13-14.  In fact, a careful review reveals no reference whatsoever to that symptom in the ALJ's findings.  And yet, Plaintiff clearly testified to that need during the administrative proceedings. *See* AR 29-30 (uses restroom 15 times a day/has to go to the bathroom "a lot").

As noted above, the ALJ found Plaintiff suffered from the severe impairments of ulcerative colitis and Crohn's disease.  More particularly, the ALJ's credibility findings on these impairments include:

- On August 25, 2005, the claimant was noted to be doing well overall and had no blood in her stool.
- On October 20, 2005, the claimant's colitis was found to be stable.
- On August 23, 2006, the claimant was noted to be noncompliant with her ulcerative colitis medication.
- The record shows that the claimant had been recommended to have certain surgeries to help with her ulcerative colitis and Crohn's disease, but she had been adamant not to undergo those procedure[s].  However, on November 29, 2006, the claimant did undergo an uneventful colectomy with about 1 foot of sigmoid colon remaining above the peritoneal reflection.  She was discharged on December 9, 2006, in stable condition.
- On February 2, 2008, treating notes state that the claimant's treating doctor, Dr. Plotzker was angry with her for running out of medication.  This implies that the claimant is not compliant with her treatment and is not persistent in self-care and prevention of symptoms.

AR 13, internal citations omitted.

In her argument, Plaintiff points to her testimony at the administrative hearing and pages 669 and 671 of the medical record in support of her claim that the ALJ should have considered her need of frequent restroom breaks.[6]

---

[6]Plaintiff also cites to page 222 of the administrative record, however, that is page three of a multiple page laboratory report that makes no reference to frequency or the need of restroom facilities.

This Court's *thorough and careful review* of the administrative record however reveals many more references to Plaintiff's condition and to that symptom in particular.  To begin, the Court is concerned by the ALJ's failure to address this disabling symptom as alleged by Plaintiff because she had reported this symptom in advance of the May 2009 hearing.  For example, in an undated disability report,[7] Plaintiff reported that she used "the toilet many, many times per day." AR 110.  In a May 15, 2007, disability report - field office, the interviewer reported that Plaintiff "had to go to the restroom once during 1 hour interview."  AR 107.  In an Exertional Daily Activities Questionnaire dated May 27, 2007, Plaintiff reported that she could not travel far from home because she had "to use the restroom all the time."  AR 120; *see also* AR 122.  In that same document, when answering inquiries about her ability to finish housework and chores, Plaintiff indicated she had "to use the restroom every 20 to 30 min."  AR 122.  In a September 4, 2007, disability report - appeal form,[8] Plaintiff responded that she was "always in the bathroom" in response to an inquiry about changes that had occurred in her daily activities.  AR 131.  In a November 7, 2007, disability report - appeal form,[9] Plaintiff noted the need "to go to the bathroom every 15 minutes."  AR 141.

With specific regard to the medical record evidence, many more references to Plaintiff's condition and that symptom were identified:[10]

*Treating records of Richard Plotzker, M.D.*[11]

1.      Progress note of October 1999 noting "BM 2-3 Blood & mucus every BM" (AR 456)
2.      Progress note of May 2000 noting "having 3 bm/dy" (AR 454)

---

[7]Although the disability report it undated, it is marked as Exhibit No. 2E for purposes of the administrative hearing.  AR 109-116.

[8]Exhibit 7E.

[9]Exhibit 10E.

[10]While much of this medical evidence is based on Plaintiff's own reporting, that is not surprising given the nature of the ailment.  *See, e.g.*, *Lahori v. Astrue*, 2012 WL 1952909 (9th Cir. May 31, 2012).

[11]Dr. Plotzker is Plaintiff's treating gastroenterologist.

3.       Progress note of May 2002 noting "BM - 3/dy" (AR 448)
4.       Progress note of December 2003 noting "BM - frequent" (AR 444)
5.       Progress note of February 2004 noting "3-4 bm/dy" (AR 443)
6.       Progress note of November 2004 noting bowel movements of "up to 10/day" (AR 440)
7.       Progress note of August 2005 referencing "BM 5/day to 1/d" (AR 436)
8.       Progress note of October 2008 referencing "10BM/day" (AR 730)

*McHenry Medical Group - Kathleen L. Eve, M.D.*[12]

9.       Progress note of November 2006 noting Plaintiff "has had at least 10 stools a day" (AR 523)
10.      Progress note of January 2007 wherein it is referenced that Plaintiff was "having some rectal bleeding and 10 or more bowel movements a day [and had] lost 35 pounds since her surgery" (AR 520)

*Treating Records of Doctor's Medical Center*

11.      Progress record dated August 28, 2006, referencing bowel movements of "up to 15 BM/day" (AR 257)
12.      Progress record dated October 14, 2006, indicating "multiple melenotic stools" (AR 320)
13.      Progress record dated October 17, 2006, indicating "8 BM's" (AR 317, emphasis in original)
14.      Report of November 2006 referencing "10-14 bowel movements a day" (AR 386)
15.      Progress record dated December 7, 2006, referencing "fecal urgency & frequency expected" (AR 418)
16.      Progress record dated December 8, 2006, referencing "frequent flatus & BM's" (AR 417)

*Other Relevant Miscellaneous Records*

17.      On August 12, 2006, in an urgent care treatment note of the Stanislaus County Health Service Agency, references are made to frequency and diarrhea "many times during the day" (AR 157, 588)

18.      On August 1, 2007, during an examination by Anthony I. Ferrari, M.D., board certified internist, Plaintiff reported severe and unpredictable diarrhea (AR 602)

        Despite the numerous references to a frequency issue throughout the medical record that would appear to comport with Plaintiff's testimony at the administrative hearing, ALJ Havens failed to address this symptom.

        Given the significant impact a symptom such as this could have an on individual's ability to work, and in light of the abundance of references to this symptom in the medical record -

_____

[12]Dr. Eve performed the subtotal colectomy surgery.

1  particularly where the symptom appears to worsen over time - the ALJ's failure to address this

2  symptom is error.

3         This oversight or omission is made more troubling by the fact that upon inquiry by

4  Plaintiff's counsel at the administrative hearing, VE Meyers testified that an individual required

5  to use the restroom "on average about 15 times a day for about five minutes at a time" would be

6  unable "to maintain employment on a sustained basis." AR 32-33. Finally, the ALJ's RFC does

7  not address this significant limitation in any way. *See* AR 12. An ALJ must consider a

8  claimant's symptom testimony in assessing his RFC. 20 C.F.R. § 404.945(a)(3). If the ALJ

9  found Plaintiff's testimony with regard to her need to use the restroom frequently to be not

10  credible, she was required to identify evidence in support of her conclusion. The Court finds that

11  notwithstanding that the medical record is replete with references to Plaintiff's frequent use of

12  the restroom as a result of her severe impairments of Crohn's disease and ulcerative colitis, this

13  symptom is not addressed by the ALJ.

14         This case presents a scenario sufficiently similar to one wherein an ALJ's silent disregard

15  of lay testimony about how an individual's impairment limits an ability to work is found not to

16  be harmless. In fact, the Ninth Circuit has so found because a reviewing court cannot confidently

17  conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a

18  different decision. *Stout v. Commissioner*, 454 F.3d 1050 (9th Cir. 2006). Here, although the

19  evidence at issue does not pertain to lay testimony, this evidence, if considered and found to be

20  credible, would result in a finding of disability pursuant to the VE's testimony. Therefore, the

21  ALJ must address this evidence in order to determine whether Plaintiff is disabled.

22         In light of the significant impact this symptom may have on Plaintiff's ability to work,

23  this Court finds the ALJ's error cannot be harmless as the error may negate the validity of the

24  ALJ's ultimate conclusion. Thus, the ALJ's error is not inconsequential here. For the foregoing

25  reasons, this Court finds that remand is warranted on the specific issue of Plaintiff's frequent

26

27

28                                                12

1  need to use the restroom and its affect upon her ability to work in light of the ALJ's failure to

2  address the issue.

3         ***Remand Is Appropriate***

4         Section 405(g) of Title 42 of the United States Code provides: "the court shall have the

5  power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

6  or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

7  In Social Security cases, the decision to remand to the Commissioner for further proceedings or

8  simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d

9  599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original

10  administrative proceedings, a social security case should be remanded.  Where, however, a

11  rehearing would simply delay receipt of benefits, reversal and an award of benefits is

12  appropriate." *Id*. (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859

13  F.2d 1396, 1399 (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where no

14  useful purpose would be served by further administrative proceedings, or where the record has

15  been thoroughly developed").

16         Here, the Court finds that remand for further proceedings is proper to allow the ALJ to

17  specifically consider Plaintiff's frequent need to use the restroom and its impact on her ability

18  work as outlined above.  More specifically, the ALJ should reconsider Plaintiff's subjective

19  complaints with respect to her physical impairments and the resulting limitations, and either

20  credit her testimony regarding the frequent need to use the restroom or provide clear and

21  convincing reasons supported by substantial evidence for rejecting this testimony, and

22  specifically should address the evidence identified herein.  And, if necessary, the ALJ should

23  obtain additional information and clarification regarding Plaintiff's functional limitations.  The

24  ALJ should then proceed through steps four and five to determine what work, if any, Plaintiff is

25  capable of performing.

26

27

28                    13

1    Finally, in light of this decision, the Court did not consider Plaintiff's remaining

2    arguments concerning the ALJ's consideration of treating physician opinions and her findings at

3    step five. *See Byington v. Chater*, 76 F.3d 246, 250-51 (9th Cir. 1996) ("Because we find that

4    the district court committed error and the decision of the ALJ is supported by substantial

5    evidence, we do not consider the [] other arguments on appeal").

6                              **RECOMMENDATION**

7    Based on the foregoing, the Court finds that the ALJ's decision is not supported by

8    substantial evidence in the record.   Accordingly, the Court RECOMMENDS that Plaintiff's

9    appeal from the administrative decision of the Commissioner of Social Security be GRANTED,

10   the matter be REMANDED for further proceedings, and that JUDGMENT be entered for

11   Plaintiff Darla Tyler and against Defendant Michael Astrue.

12   These findings and recommendations will be submitted to the Honorable Anthony W.

13   Ishii pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).   Within

14   fifteen (15) days after being served with these findings and recommendations, the parties may file

15   written objections with the Court.   The document should be captioned "Objections to Magistrate

16   Judge's Findings and Recommendations."   The parties are advised that failure to file

17   objections within the specified time may waive the right to appeal the District Court's order.

18   *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

19

20   IT IS SO ORDERED.

21   **Dated:   June 25, 2012**              **/s/ Gary S. Austin**

22                                     UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28                              14